IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MARITZA SEPULVEDA, | § § § | |
| *Plaintiff*, | § § | |
| vs. | § § | Civil Action No. _____ |
| BOOMERJACK'S ADDISON, LLC; and STAFF ONE HR II, INC., | § § § § | |
| *Defendants*. | § § | |

### PLAINTIFF MARITZA SEPULVEDA'S ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES Plaintiff, Maritza Sepulveda, and files this Original Complaint against Defendants BoomerJack's Addison, LLC, and Staff One HR II, Inc. (hereinafter, collectively, the "Defendants"), for violations of the Fair Labor Standards Act, and in support of which, would respectfully show the Honorable Court and Jury, as follows:

## I.
### PARTIES

1. Maritza Edith Sepulveda is an individual resident of Fort Worth, Texas. The last three digits of her Texas identification card are 814 and the last three digits of her social security number are 558.

2. Defendant BoomerJack's Addison, LLC, is a domestic limited liability restaurant company doing business throughout the State of Texas, including the Sidecar Social restaurant located at 5100 Belt Line Road, Dallas, Texas, 75254, where Plaintiff Maritza Sepulveda was

employed. BoomerJack's Addison, LLC, may be served with process through its registered agent, J. Brent Tipps, at 136 Harmon Road, Hurst, Texas 76053.

3. Defendant Staff One HR II, Inc., is domestic for-profit corporation doing business in Texas and Florida with a registered address at 2054 Vista Parkway, Suite 300, West Palm Beach, Florida 33411. Staff One HR II, Inc., may be served with process through its registered agent, Cogency Global Inc., at 1601 Elm Street, Suite 4360, Dallas, Dallas County, Texas 75206.

4. Defendants BoomerJack's Addison, LLC, and Staff One HR II, Inc., are both listed as payors of Ms. Sepulveda's wages on her pay stub, and therefore, are both included as defendant-employers and/or joint-employers for purposes of this lawsuit.

## II.
### JURISDICTION AND VENUE

5. This Court has jurisdiction to hear the merits of this case, pursuant to 28 U.S.C. § 1331, as the matter arises under the laws of the United States of America, specifically, the Fair Labor Standards Act, as amended, 29 U.S.C.A. § 215, *et seq*.

6. Venue is proper in the Dallas Division of the Northern District of Texas, pursuant to 28 U.S.C. 1391(b), as Dallas County is the county in which all or a substantial portion of the events or omissions giving rise to the claims herein occurred and the county in which Plaintiff worked for Defendants.

## III.
### DISCOVERY CONTROL PLAN

7. The parties will conduct discovery in this action under the Discovery Control Plan Level III, as set forth in Texas Rule of Civil Procedure 190.1.

## IV.
### FACTUAL BACKGROUND

8. On October 7, 2019, Plaintiff Maritza Sepulveda (who speaks Spanish and English)

began working for Defendants as a Corporate Executive Chef at Defendants' Sidecar Social restaurant located at 5100 Belt Line Road, Dallas, Texas, 75254.

9. At the time that this action accrued, Defendants had at least 15 employees and Defendants were Plaintiff's employers covered by the FLSA.

10. In January 2020, an employee, Jorge Valdez, approached Ms. Sepulveda to say that he was not being compensated for a lot of hours he worked, and the hours weren't being reflected on his pay check. When Ms. Sepulveda checked Defendants' internal timekeeping/ payroll system, she discovered that the largely Hispanic morning kitchen staff were all being clocked-in approximately 30-45 minutes late every day since approximately December 2019.

11. Alarmed by this finding, Ms. Sepulveda approached the Front of House Manager in Addison, Kayla Couples, regarding the fact that only this group of employees was not being clocked-in on time. This matter could easily be corrected in the timekeeping/ payroll system by someone with the authority to do so, including Ms. Couples. At the time, Ms. Couples said that when she could get around to it, she would edit the clock-in and clock-out times for the employees, but the problem, accordingly to Ms. Couples, was that she, allegedly, couldn't understand what they were saying. Ms. Couples said to Ms. Sepulveda, *"That's why you were hired to translate."*

12. A few days later, Ms. Sepulveda went to the General Manager of the restaurant, Steve Richardson, who was friends with Ms. Couples, and told him that she found an issue with employee pay and the employees needed to be paid their missing hours. Mr. Richardson asked, *"Was it just for this week?"* Ms. Sepulveda said, no, and that the employees needed to be paid for two months of docked time. Ms. Sepulveda asked what she could do to address the situation, including calling the payroll department. Mr. Richardson told Ms. Sepulveda that he was going

to *"handle Kayla,"* but he appreciated her looking into the matter. Trusting that Mr. Richardson would fix the pay issue, Ms. Sepulveda went back to the staff and told them that she had taken care of it.

13. However, after the passing of approximately two more pay periods, Ms. Sepulveda was told by the employees that they still had not received compensation for the improperly docked hours that they had worked. GM Mr. Richardson and Ms. Couples had not, in fact, done as they had promised and made things right with the employees. Dismayed, Ms. Sepulveda sent a message to Defendants' Regional Director, Ryan Kelley, saying that she needed to have a meeting with him to discuss a very important matter. Mr. Kelley told Ms. Sepulveda that (a) she needed to get the information of all employees who had not been paid; and (b) Mr. Richardson obviously hadn't done anything, so Mr. Kelley was going to take care of it with Human Resources and the pay roll department personally.

14. After more time passed, the employees at the location where Ms. Sepulveda worked began to get very frustrated over the unlawfully withheld wages, so they approached Ms. Sepulveda about it again. They told Ms. Sepulveda that Ms. Couples was not fixing anything and she was showing up late to work all the time. At that point, Ms. Sepulveda said that they may need to speak with Mr. Kelley directly. When Ms. Sepulveda approached Ms. Couples about the matter, Ms. Couples was very dismissive, saying that it wasn't her problem and that Mr. Kelley was handling it.

15. Ms. Sepulveda then messaged Mr. Kelley and said that she wanted to schedule a group meeting with him and the staff, as she was very worried that the staff no longer trusted that the matter would be handled appropriately. Ms. Sepulveda then worked with the employees to

calculate the time/ pay that they were missing by allowing them to review the internal timekeeping/ payroll system.

16.     However, during the process, the employees discovered that someone had accessed the system and changed their rates of pay without notifying any of the employees of the change, and they immediately brought it up with Ms. Sepulveda. Alarmed by the unannounced pay rate change, Ms. Sepulveda brought the matter up with Mr. Kelley, who acted shocked by the news and assured Ms. Sepulveda that *"we're going to get these people paid."*

17.     On or about March 8, 2020, Ms. Sepulveda got a text message from Mr. Kelley, saying that he wanted to have a meeting with her and Michael Curry, Director of Human Resources, at the home office at 9:30 am the next day.

18.     On or about March 9, 2020, Ms. Sepulveda went to the home office for the meeting in Mr. Curry's office. Upon arrival, Mr. Curry said, *"Good morning, Maritza. This is not going to be a good morning for you."* Mr. Curry proceeded to say that they had, allegedly, gathered statements from the staff and that Ms. Sepulveda was responsible for sexual harassment, so she was being terminated immediately. Dumbfounded, Ms. Sepulveda said, *"I beg your pardon? Statements from whom?"* Mr. Curry responded, *"You really think I'm going to tell you?"* Ms. Sepulveda then stated, *"This isn't true at all. Do I have a say in this?"* At that point, Mr. Curry handed Ms. Sepulveda a document and said that she needed to sign. When Ms. Sepulveda refused, Mr. Curry said, *"Well, I have a witness, and Mr. Kelley will sign it."*

19.     The next day, Mr. Kelley sent an email to staff, informing them that he had already hired a replacement for Ms. Sepulveda's position.

20.     Because of Defendants' unlawful and retaliatory termination of Ms. Sepulveda, she has suffered both emotional and financial damages, *inter alia*, that continue to this day.

# V.
## CAUSES OF ACTION

21. Plaintiff Maritza Sepulveda re-alleges and incorporates the allegations contained in all Paragraphs, above, as if restated herein, including all subsections of this "Causes of Action" section.

22. Plaintiff brings this action against Defendants for violation of the Fair Labor Standards Act, as amended, 29 U.S.C.A. § 215, *et seq*. ("FLSA"). FLSA Section 215 (a)(3) provides, as follows:

> (a)   . . . [I]t shall be unlawful for any person –
>
> (3) to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee.

29 U.S.C.A. § 215(a)(3).

23. Specifically, on or about March 9, 2020, Ms. Sepulveda suffered retaliation in the form of termination by Defendants after she raised concerns and complaints over (a) Defendants' failure and/or refusal to pay employees their wages in accordance with the law, and (b) Defendants' alteration of the employees' rates of pay without providing notice of the change to such employees. Each time that Ms. Sepulveda brought these concerns to her superiors, including Kayla Couples, Steve Richardson, and Ryan Kelley, she was assured that the matters would be addressed. Prior to and as the alleged basis for Ms. Sepulveda's termination, Defendants retaliated against her by instigating and declining to investigate retaliatory, sham allegations that Ms. Sepulveda was responsible for sexual harassment in the workplace.

24. Defendants' stated reason for Ms. Sepulveda's termination (*i.e.*, alleged reports of sexual harassment) were mere pretext for the real reason, which was Ms. Sepulveda's bringing complaints that employees were not being paid wages for time worked and employee wages being altered without notification to such employees. Furthermore, Defendants retaliated against Ms. Sepulveda in clear violation of the law and with malice, as evidenced by the retaliatory sourcing of sham sexual harassment allegations against Ms. Sepulveda in order to terminate her employment.

25. Ms. Sepulveda's complaints to her superiors, as described above, were protected activities under the FLSA.

26. As a direct result of Defendants' herein-described unlawful employment actions, Ms. Sepulveda has suffered immense emotional and financial damages, *inter alia*, that continue to this day.

27. Pursuant to 29 U.S.C.A. § 216, Plaintiff Maritza Sepulveda seeks recovery of all legal or equitable relief as may be appropriate to effectuate the purposes of Section 215(a)(3), including, but not limited to, back pay and front pay (as reinstatement is not feasible), compensatory damages, including emotional distress, liquidated damages, reasonable attorney fees, expert fees, and costs of court, with pre- and post-judgment interest at the rates provided by law.

## VI.
### JURY DEMAND

28. Plaintiff hereby demands a trial by jury.

## VII.
### CONCLUSION AND PRAYER

Wherefore, Plaintiff Maritza Sepulveda prays that Defendants BoomerJack's Addison, LLC, and Staff One HR II, Inc., be cited to appear and answer herein, and that on final trial

Plaintiff have judgment for the following relief:

    a.  Back pay, front pay, and other equitable relief;

    b.  Compensatory damages;

    c.  Liquidated damages;

    d.  Pre-judgment and post-judgment interest at the rates provided by law;

    e.  Reasonable attorney fees, expert fees, and all costs of court; and

    f.  Such other and further relief to which Plaintiffs may be justly entitled.

Respectfully submitted.

/s/Susan E. Hutchison
SUSAN E. HUTCHISON
Texas Bar No. 10354100
sehservice@hsjustice.com

J. ROBERT HUDSON, JR.
Texas Bar No. 24094736
jr@hsjustice.com

HUTCHISON & STOY, PLLC
505 Pecan Street, Suite 101
Fort Worth, Texas 76102
T: (817) 820-0100
F: (817) 820-0111

**ATTORNEYS FOR PLAINTIFF**